## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY L.,<br><br>       Plaintiff,<br><br>    v.<br><br>KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,<br><br>       Defendant. | Civil Action<br>No. 1:20-cv-14158 (CPO)<br><br>**OPINION** |

**Appearances:**

Alan Harris Polonsky
POLONSKY & POLONSKY
512 S White Horse Pike
Audubon, NJ 08106

      *On behalf of Plaintiff Mary L.*

Naomi Mendelsohn
Special Assistant
United States Attorney
Social Security Administration
Office of the General Counsel, Region III
P. O. Box 41777
Philadelphia, PA 19101

      *On behalf of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.*

O'HEARN, District Judge.

I.     **INTRODUCTION**

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended by 42 U.S.C. § 405(g), regarding the application of Plaintiff Mary L.[1] ("Plaintiff") for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*. Plaintiff appeals from the final decision of the Defendant Acting Commissioner of Social Security ("Commissioner") denying that application. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court **VACATES** the Commissioner's decision and **REMANDS** the action for further proceedings.

II.    **BACKGROUND**

The Court recites herein only those facts necessary for its determination on this Appeal.

A.     **Administrative History**

Plaintiff protectively filed a Title II application on November 3, 2017, for a period of disability and disability insurance benefits, alleging disability beginning on October 6, 2017. (AR. 20). The claim was initially denied on May 24, 2018. (AR. 20). Upon reconsideration on September 26, 2018, the claim was denied again. (AR. 20). Plaintiff thereafter filed a written request for a hearing received on October 16, 2018. (AR. 20). Accompanied by counsel, Plaintiff appeared and testified at a hearing on October 7, 2019, in Pennsauken, New Jersey. (AR. 20). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by her name and last initial.

decision dated October 25, 2019. (AR. 31). The Appeals Council denied Plaintiff's request for review on August 25, 2020. (AR. 2). Plaintiff now appeals to this Court. (Compl., ECF No. 1).

### B.    Plaintiff's Background and Testimony

Plaintiff is a forty-eight-year-old woman who lives with her husband and daughter. (AR. 30). Plaintiff has at least a high school education and is able to communicate in English. (AR. 30). She alleges that her disability began on October 6, 2017, due to several physical and mental conditions. (AR. 147). From around 2008 to October 6, 2017, Plaintiff worked as an aide and head cook for Respond, a daycare business. (AR. 149).  From 2004 to 2005, Plaintiff worked as an assembler for Patriot Manufacturing. (AR. 150).

In her initial claim, Plaintiff complained of several functional limitations including degenerative disc disease, spinal stenosis, Hashimoto's Disease, fibromyalgia, anxiety, depression, and obesity. (AR. 184). Plaintiff testified that she experiences "constant, 24 hours" pain in her back, hands, and legs. (AR. 152). She testified that on "good" days the pain is "like, when, you have the flu" and on "bad" days the pain is so bad that she cannot move at all. (AR 152). Plaintiff detailed the medication she takes for her pain as well as the accompanying side effects including dry mouth, dry eyes, fatigue, and "more fatigue." (AR. 153). Plaintiff also testified that she attends therapy and takes medication for her depression, anxiety, and panic attacks. (AR. 154–56).

### C.    Relevant Medical History

The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. Because Plaintiff's arguments focus exclusively on her mental impairments and the vocational expert's ("VE") testimony, the Court will focus this medical history accordingly. This recitation is not comprehensive.

1.   <u>Ann MacMurray, APRN</u>

Plaintiff was treated by Ann MacMurray, ARPN, her primary care provider, during the relevant period. (AR. 509–550).

In November 2017, Plaintiff described to Ms. MacMurray that she suffers from anxiety and depression, that the symptoms were worse in the evening, and that she experiences major life stressors. (AR. 530). During examination, she was calm, active, alert, and oriented; had good judgment; clear and fluent speech; no hallucinations; intact memory; above average intelligence; a sad mood and congruent affect; intact insight and thought processes; and unremarkable thought content. (AR. 531). Ms. MacMurray prescribed paroxetine ("Paxil") and referred Plaintiff to a psychiatrist. (AR. 531). At Plaintiff's next appointment in December 2017, Plaintiff noted that her depression had improved, but that her anxiety worsened. (AR. 525). Plaintiff also described symptoms of insomnia and social withdrawal. (R. 525). Ms. MacMurray then prescribed Plaintiff hydroxyzine for her anxiety. (R. 525).

A week after the December 2017 appointment, Plaintiff returned to Ms. MacMurray and made no mental health complaints and a mental status exam documented that Plaintiff was active, alert, and oriented to time, place, and person, and had a normal mood and affect. (AR. 518). Similarly, during a January 2018 visit to Ms. MacMurray, Plaintiff had no mental health complaints, and a mental status exam documented that Plaintiff was active and alert, had normal mood and affect, and had good judgment. (AR. 512).

In September 2018, Plaintiff reported to Ms. MacMurray that her depression had improved. (AR. 1077). Plaintiff also indicated that she had been discharged from counseling because she missed an appointment and that she was going to check to see what other providers accepted her insurance. (AR. 1077). During her September 2018 examination, Plaintiff was calm, cooperative,

active, alert, and oriented; had good judgment; fluent and normal speech; intact memory; above average intelligence; a normal and happy mood and euphoric affect; intact insight and thought processes; and unremarkable thought content. (AR. 1077).

In February 2019, Plaintiff discussed her anxiety and depression with Ms. MacMurray, but indicated that the conditions did not interfere with her daily-living activities. (AR. 1052). During her examination, Plaintiff was alert and active; had a normal mood and affect; and good judgment. (AR. 1053). Ms. MacMurray also recommended that Plaintiff wean off Paxil and start fluoxetine ("Prozac"). (AR. 1053).

During her May 2019 visit to Ms. MacMurray, Plaintiff again complained of depression and anxiety, but reported that her symptoms still did not interfere with her daily-living activities. (AR. 1048). During a June 2019 visit with Ms. MacMurray, Plaintiff denied feeling panic and isolation and reported that she had good energy and could maintain functionality. (AR. 1047). Ms. MacMurray prescribed Plaintiff alprazolam for her anxiety, noted that her depression had improved with medication, and reported that she was walking daily. (AR. 1048).

## 2. Jewish Family Services

In April 2018, Plaintiff was evaluated at Jewish Family Services for her mental health. (AR. 693). Plaintiff reported that for the past year she had experienced chronic depression and anxiety that was triggered by driving, groups of people, and strangers. (AR. 693). She also reported feeling "like she can't breathe, can't focus." (AR. 693). She described her strength as "cooking" and her weakness as "everything." (AR. 693). Plaintiff expressed that her family believed that she was exaggerating her health issues and mental health symptoms. (AR. 698). She also indicated that she could only attend therapy every four weeks. (AR. 698).

### 3.  Danielle McAllister, M.A.

In October 2018, Plaintiff began treatment with Danielle McAllister, M.A., at Oaks Integrated Care. (AR. 848). Plaintiff expressed that she was seeking treatment to increase her coping skills for anxiety and depression, and that her goal was to increase her enjoyment in life and feel productive. (AR. 848). During her mental status examination, Plaintiff was oriented to time, place, and person; had an appropriate appearance; logical thoughts; no delusions or hallucinations; and intact memory. (AR. 855–57). At her first session, Plaintiff reported an anxious mood and frequent panic attacks, and indicated that she had been unable to maintain employment due to pain and medical complications. (AR. 857–58).

Ms. McAllister treated Plaintiff twice per month though August 2019. (AR. 882–932, 1079–1098). Records from those visits contain few, if any, mental status examinations and largely document Plaintiff's self-reported depression. (AR. 882–932, 1079–1098). She regularly denied homicidal thoughts, hallucinations, and delusions. (AR. 882–932, 1079–1098). Plaintiff was advised to try relaxation exercises, EFT tapping, self-care, and yoga. (AR. 882–932, 1079–1098).

### 4.  Lewis Lazarus, Ph.D.

In May 2016, in conjunction with a prior application for benefits, Plaintiff was evaluated by Lewis Lazarus, Ph.D., a consultative psychologist. (AR. 430). Plaintiff reported no inpatient or outpatient hospitalization, and expressed that she had a sad and dysphoric mood, frequent crying spells, and panic symptoms when meeting new people. (AR. 431). During her mental status examination, Plaintiff was cooperative and friendly; had an adequate manner of relating; was appropriately and neatly dressed; well-groomed; had a normal gait, posture, and motor behavior; appropriate eye contact; had fluent speech with adequate expressive and receptive language functions; was coherent and goal directed thought processes; had a depressed and anxious affect;

6

and was nervous. (AR. 431). Plaintiff was alert and oriented in all spheres; had moderately impaired recent and remote memory; fair attention and concentration; could perform simple calculations and serial 3s; had low average functioning; and fair to good insight and judgment. (AR. 431). Plaintiff indicated that she was able to dress, bathe, groom, cook, prepare meals, clean, wash laundry, shop, manage money, manage her medications, and drive. (AR. 431). She also indicated that she had friends that would see her and that she got along with her family. (AR. 431). Plaintiff reported that she knitted and spent her days taking her daughter to a sitter, going to work, coming home, picking up her husband and daughter, and caring for her family. (AR. 431). Dr. Lazarus noted that Plaintiff had a fair to good prognosis and recommended a psychology consultation and medication management. (AR. 432).

### 5. Christopher Williamson, Psy.D.

In April 2018, Christopher Williamson, Psy.D., a consultative psychologist, evaluated Plaintiff. (AR. 582–83). Plaintiff indicated to Dr. Williamson that she had a sad mood, was despondent and hopeless, had ongoing anxiety, nervousness, and panic attacks that were worse when she was driving. (AR. 582–83). During her mental status examination, Plaintiff was casually dressed and groomed; had no formal thought disorder or compulsions of thinking or behavior; and had clear, coherent, and goal-directed verbalizations. (AR. 582–83). Her mood was depressed and anxious, but she had congruent affect. (AR. 582–83). She could repeat 4 digits forward and backward; could not complete serial 7s; could do simple math calculations; and had average fund of knowledge. (AR. 582–83). Plaintiff was oriented to time, place, and person and current events. (AR. 582–83). Dr. Williamson diagnosed Plaintiff with depressive disorder and panic disorder and indicated that Plaintiff was competent to handle funds. (AR. 583).

6.   David Strand, Ph.D.

In May 2018, David Strand, Ph.D., a state agency psychologist, reviewed Plaintiff's record and completed a psychiatric review treatment form ("PRTF") indicating that Plaintiff had moderate limitations in the ability to understand, remember, or apply information and in concentration, persistence, or pace, and mild limitations in the ability to interact with others and to adapt or manage helpful. (AR. 192–93). Dr. Strand also completed a mental RFC assessment in which he noted that Plaintiff was moderately limited in the ability to understand and remember detailed instructions, but otherwise had no significant limitations in the area of understanding and memory limitations. (AR. 192). Dr. Strand further indicated that Plaintiff had moderate limitations in the ability to carry out detailed instructions, maintain attention and concentration for extended periods of time, and in the ability to complete a normal workday and week without interruptions from psychologically based symptoms, but was otherwise not significantly limited in concentration and persistence. (AR. 192–93). Dr. Strand opined that Plaintiff had no limitations whatsoever in social interaction or adaptation. (AR. 193). Dr. Strand indicated that Plaintiff retained the ability to persist at tasks that can be learned in up to three months on the job within her physical limitations. (AR. 193–94).

7.   Joseph Bencivenne, Psy.D.

In September 2018, Joseph Bencivenne, Psy.D., another state agency psychologist, reviewed the record on reconsideration and affirmed Dr. Strand's PRTF and mental RFC assessment. (AR. 205–07, 211–12).

**D.    The ALJ's Decision**

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR. 31); 20 C.F.R. § 404.1520. At Step

One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 6, 2017, the alleged onset date. (AR. 22). At Step Two, the ALJ found the following severe impairments:  degenerative disc disease, rheumatoid arthritis, fibromyalgia, major depressive disorder, and panic disorder. (AR. 22–23). The ALJ found that the claimant's Hashimoto's disease, obesity, abdominal pain, and substance abuse were not "severe" impairments at Step Two of the sequential evaluation process. (AR. 23). At Step Three, the ALJ found that none of Plaintiff's physical or mental impairments, or any combination thereof, met or medically equaled the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR. 23–25). Notably, the ALJ determined that Plaintiff's mental impairments, whether considered singly or in combination, did not meet or medically equal the criteria of Listing 12.04 or 12.06, (AR. 24–25), reasoning as follows,

> In understanding, remembering or applying information, the claimant has a moderate limitation. The psychiatric treatment evidence does not contain mental status signs of difficulty in this criterion. Rather it shows logical thought processes, full orientation, intact concentration and full memory. (Ex. 17F/9, 10; see also Ex. 14F/9, 59, 85). She also presents similarly before the consultative psychiatric examiner, summoning full recall of digits introduced to her and concentration through serial sevens (Ex. 10F/2). She was not able to recall some common objects, but in the context of the entire treatment evidence this does not support more than moderate deficits.

> In interacting with others, the claimant has a moderate limitation. The claimant demonstrated the most serious issues in this criterion over the course of examination encounters. Specifically, she became tearful during the consultative examination encounter and the hearing (Ex. 10F/2; Test.). She also demonstrates a depressed mood on some encounters, which can reasonably interfere with social interactions on occasion (Ex. 13F/10; Ex. 17F/9). However, there are also notes where clinicians observed the claimant to be an active participant in group therapy (Ex. 22F/5, 9, 15, 18, 22). She also keeps a supportive relationship with a best friend, according to the third party function report in the record (Ex. 12E). Further, she has appeared appropriately and cooperatively for the majority of her examination encounters (Exs. 14F/59; 17F/9; 19F/1).

> With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. It is reasonable to find the claimant's emotional instability as

a hindrance to persistence and pace, as a depressed mood can interfere with follow through and motivation. However, the claimant shows dependability with follow up for her medical treatment throughout the period at issue. She also demonstrated intact cognitive functions for concentration and memory. She could not do serial 7s and recalled 0/3 after five and 10 minutes, but she could do simple mathematical calculations and repeat 4 digits forward and backward (Ex. 10F/2). Her concentration was intact, and her memory was not impaired (Ex. 17F/10). Therefore, there are no more than moderate limitations in this criteria.

As for adapting or managing oneself, the claimant has experienced a moderate limitation. There are notes indicative of the claimant herself begin capable of performing her usual activities, despite the diagnosis of the mental impairments (Exs. 14F/58; 11F/46). The instances where she complains of difficulties with day-to-day activities are related to her physical issues rather than her mental difficulties (Ex. 11F/47, 52, 58). She appeared emotionally overwhelmed during an evaluation, but she arrived on time as scheduled and has never been hospitalized psychiatrically (Ex. 10F/1, 3). Thus, the limitations here are no greater than moderate.

(AR. 24–25).

Before proceeding to Step Four, the ALJ determined that Plaintiff retained the following residual functioning capacity ("RFC") to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except for:

occasional climbing, balancing, stooping, kneeling, crouching, and crawling; frequent reaching, handling, fingering, and feeling; and frequent exposure to hazards such as unprotected heights and moving machinery.

(AR. 26). At Step Five, based on the testimony of the VE, the ALJ found that Plaintiff could perform the jobs of mail clerk, packaging stuffer, or compact assembler, and that a significant number of such jobs existed in the national economy. (AR. 30–31). Therefore, the ALJ found that Plaintiff had not been under a disability as defined in the Social Security Act since his alleged onset date. (AR. 31).

## III.   LEGAL STANDARD

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83

(3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.

At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.

At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.

At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.

At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

Following review of the entire record on appeal from a denial of benefits, the court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119–20 (3d Cir. 2000); *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp. 3d 512, 518 (D.N.J. 2016).

12

IV.   **DISCUSSION**

On appeal, Plaintiff asserts that the ALJ's decision should be vacated and the case remanded for the following three reasons: (1) the ALJ's finding that Plaintiff's mental impairments did not meet the Listings under 12.04 and 12.06 at Step Three was unsupported by substantial evidence; (2) the RFC the ALJ assigned to Plaintiff was unsupported by substantial evidence; and (3) the ALJ's finding that Plaintiff could engage in alternative work at Step Five was unsupported by substantial evidence. (ECF No. 11 at 16). Because the Court finds that the ALJ erred at Step Three for the reasons set forth below thus requiring remand, and that Steps Four and Five are dependent upon a proper application of Step Three, the Court will forego discussion of Plaintiff's second and third arguments.

At Step Three of the sequential evaluation process, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" *Hess*, 931 F.3d at 201–02. Here, the ALJ identified Listings 12.04 (depressive, bipolar, and related disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04, and 12.06 (anxiety and obsessive-compulsive disorders), 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06, as applicable to Plaintiff's impairments, but concluded that Plaintiff's impairments were not severe enough to meet those Listings. An impairment meets Listings 12.04 or 12.06 when the criteria in both paragraphs A and B are satisfied, or when the criteria in paragraph C are satisfied. *Id*. §§ 12.04, 12.06. Plaintiff challenges the ALJ's assessment under paragraph B. (ECF No. 11, at 19–25).

The paragraph B criteria of Listings 12.04 and 12.06 are met when a claimant has an extreme limitation of one, or a marked limitation of two of the following four mental functional areas: the ability to understand, remember, or apply information; the ability to interact with others;

the ability to concentrate, persist, or maintain pace; and the ability to adapt or manage oneself. 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.04, 12.06.

The ALJ determined that Plaintiff's mental impairments, whether considered singly or in combination, did not meet or medically equal the criteria of Listing 12.04 or 12.06. (AR. 23). In finding that Plaintiff's impairments did not meet the paragraph B criteria, the ALJ concluded that Plaintiff had only moderate limitations in the areas of understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; adapting or managing oneself; and interacting with others. (AR. 24).

Plaintiff's most compelling challenge to the ALJ's assessment of these impairments is that the ALJ mischaracterized Dr. Christopher Williamson's April 2018 psychiatric evaluation of Plaintiff by stating that Plaintiff passed a serial 7s[2] examination when, in fact, Plaintiff failed it. (ECF No. 11 at 22; AR. 583). Specifically, when describing his findings as to Plaintiff's ability to understand, remember, or apply information as a moderate limitation, the ALJ incorrectly stated that Plaintiff "presents similarly before the consultative psychiatric examiner, summoning . . . concentration through serial sevens." (AR. 24–25, citing Ex. 10F). However, Dr. Williamson's report expressly and undeniably indicates that Plaintiff in fact failed the serial 7s examination and became tearful when she tried. (AR. 583).

Defendant contends that the ALJ's misstatement was a mere "scrivener's error" that "was not dispositive in light of the substantial record that the ALJ relied upon in finding that Plaintiff had moderate limitations in this domain." (Def.'s Br., ECF No. 12 at 15). The Court disagrees.

---

[2] Serial 7s is a cognitive assessment requiring a patient to subtract 7 from 100 in reverse order. (AR. 583).

"A scrivener's error is a transcription error or a typographical error." *Amy A. v. Kijakazi*, No. 20-7655, 2021 WL 5864063, at \*5 (D.N.J. Dec. 10, 2021) (quoting *Hudon v. Astrue*, No. 10-405, 2011 WL 4382145, at \*4 (D.N.H. Sept. 20, 2011)). "In the context of social security cases, errors in ALJ decisions have been excused as mere scrivener's errors when the ALJ's intent was apparent." *Id.*; *see also Armata v. Berryhill*, No. 17-3005, 2018 WL 4829180, at \*12 (D. Mass. Oct. 4, 2018) ("In nearly all of the Social Security cases in which a court has concluded that an ALJ made a mere typographical or scrivener's error, the ALJ's intent was more apparent." (internal quotations omitted) (quoting *Douglas v. Astrue*, No. 09-1349, 2010 WL 3522298, at \*3 (D.S.C. Sept. 3, 2010))).

Here, it is not so clear what the ALJ intended to say regarding Plaintiff's mental abilities based on the serial 7s test and how important that information was in the ALJ's findings and conclusions in the Step Three analysis. The Court cannot simply assume, as the Defendant argues, that the ALJ, in fact, intended to say that Plaintiff failed the serial 7s examination in his assessment of Plaintiff's ability to understand, remember, or apply information. *Diggin v. Saul*, No. 19-0022, 2019 WL 3495593, at \*10 (E.D. Pa. July 31, 2019) ("Inadequate discussion that leaves a court to speculate on what evidence led the ALJ to the conclusions set forth in the decision precludes any meaningful judicial review." (citations omitted)).

While the Court need not reach the alleged errors in Step Four by the ALJ since the Court finds error in Step Three sufficient to remand, the Court cannot overlook the fact that in the Step Four analysis, the ALJ again mischaracterized Dr. Williamson's evaluation, stating that he found that Plaintiff had "demonstrable concentration for serial sevens." (AR. 25). Again, this is simply not accurate. Although the ALJ correctly noted that Plaintiff failed serial 7s in his evaluation of Plaintiff's ability to concentrate, persist, and maintain pace, (AR. 24), the fact that the ALJ again

misstated this factual evidence two out of the three times it was specifically relied upon by the ALJ refutes the Defendant's arguments that the factual misstatement was simply a scrivener's error. *See Casas v. Saul*, No. 19-01154, 2021 WL 107244, at *5 n.7 (D.N.M. Jan. 12, 2021) (remanding on other grounds while noting that "the ALJ was somewhat sloppy in her discussion" of Plaintiff's serial 7s evaluation and directing the ALJ, on remand, to "ensure that she describes the [consultative examiner's] findings with more care"). The ALJ's analysis is not only inconsistent with the evidence but internally inconsistent. Because of this, the Court is unable to determinate if, how, and to what degree this misstatement of the evidence tainted the overall decision of the ALJ.

In summary, it is not clear to the Court whether the ALJ formed his conclusion at Step Three with the incorrect information that Plaintiff passed the serial 7s or the correct information that Plaintiff did not. Based on this record, concluding that the ALJ's two different misstatements and characterizations of the evidence was simply a scrivener's error would require the Court to "improperly speculate about the ALJ's intent" and weight given to this evidence. *Amy A.*, 2021 WL 5864063, at *5.

Moreover, other courts in this circuit "have concluded that substantial evidence cannot be based on factual errors." *Rodriguez v. Colvin*, No. 16-4322, 2018 WL 1474073, at *4 (E.D. Pa. Mar. 23, 2018); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 357 (3d Cir. 2008) (ALJ's decision not supported by substantial evidence when it is based on mistakes and mischaracterization of evidence); *Coniglio v. Colvin*, No. 15-40, 2016 WL 4385870, at *9 (E.D. Pa. July 26, 2016) ("[A]n analysis based on factual errors and mischaracterizations of the evidence cannot provide substantial evidence to find that a claimant's complaints of pain are not credible."); *Cassidy v. Colvin*, No. 13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014)

16

("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision"); *Okunuga v. Astrue*, No. 09-2058, 2011 WL 445100, at *2 (D.N.J. Feb. 4, 2011) (remanding where "ALJ misconstrued certain lab results, which in reality showed that Plaintiff tested negative for drugs during the relevant period"); *Shaw v. Schweiker*, 536 F. Supp. 79, 83 (E.D. Pa. 1982) (remanding where ALJ "considered facts in an improper manner and lacked a proper basis for his conclusions").

Further, while it may be true that "factual errors are not necessarily dispositive of an ALJ's findings," *Rodriguez*, 2018 WL 1474073, at *8,  in this case the factual error could be dispositive of the ALJ's decision. This is because a proper characterization of Dr. Williamson's evaluation may have resulted in a finding that Plaintiff meets a 12.04 or 12.06 Listing. Perhaps on remand the ALJ will come to the same conclusions but perhaps he will not. Nonetheless, it is beyond the scope of review of this Court to speculate and then decide what significance a proper characterization of Dr. Williamson's evaluation would have had on the ultimate outcome of Plaintiff's disability claim.  *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2006) (the court is "not permitted to reweigh the evidence or impose their own factual determinations."); *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (the court does not "weigh the evidence or substitute its conclusions for those of the fact-finder."); *see also Zuschlag v. Comm'r of Soc. Sec.*, No. 18-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Armone v. Saul*, No. 18-10526, 2021 WL 2103290, at *7 (D.N.J. May 25, 2021) ("It may be that, on remand, the Commissioner may again find that Plaintiff's mental impairments neither meet nor equal a Listed Impairment. That

17

determination, however, is for the Commissioner—not this Court—to make in the first instance and must be based on a proper evaluation of the evidence of record.").

The Court recognizes the existence of the "harmless error" doctrine, in which findings of the ALJ that would have no effect on the ALJ's ultimate decision do not warrant remand. *See Jackson v. Barnhart,* 120 F. App'x 904, 906 (3d. Cir. 2005) (citing *Boone v. Barnhart*, 353 F.3d 203, 209 (3d. Cir. 2003)) (finding where the ALJ's error "is harmless, [the] court will not reverse the ALJ's decision."); *see also Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003). However, cases considering the harmless error doctrine in the context of social security appeals "strongly caution that harmless error analysis should be applied sparingly, and only in extraordinary cases." *Orchard v. Saul*, No. 18-02297, 2020 WL 1126235 (M.D. Pa. Jan. 21, 2020) (citations omitted), *report and recommendation adopted*, No. 18-02297, 2020 WL 1082754 (M.D. Pa. Mar. 4, 2020). Here,  the Court is unable to determine whether the ALJ's misstatement of the factual evidence twice, in two different steps, was, in fact, harmless. Thus, the Court does not believe application of the harmless error doctrine is appropriate here.

Accordingly, the Court concludes that remand of this matter for further consideration is appropriate. On remand the ALJ must correctly state the evidence and properly consider what impact, if any, Plaintiff's inability to pass serial 7s has on her ability to understand, remember, or apply information, or otherwise, in Step Three. Of course, the ALJ must further take proper care to accurately state and fairly consider this evidence in all subsequent steps thereafter.[3]

---

[3]  Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's mental impairments, the Court does not consider those claims.

## V.      **CONCLUSION**

For the foregoing reasons, the Court will vacate the final decision of the Acting Commissioner and remand the action for further proceedings. An appropriate Order will be entered.


Date: April 7, 2022

　　　　　　　　　　　　　　　　　　　　　　　　 */s/ Christine P. O'Hearn*
　　　　　　　　　　　　　　　　　　　　　　　　 **CHRISTINE P. O'HEARN**
　　　　　　　　　　　　　　　　　　　　　　　　 **United States District Judge**